

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

NOV 2 1 2003

ROBERT H. SHEMWELL, CLERK
BY _____
                    DEPUTY

# CV03-2141 L-O

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

JURY TRIAL DEMANDED HEREIN

JUDGE DOHERTY

NO._____                                    DIVISION_____

GRB OIL AND GAS PROPERTIES, INC. AND GULF COAST MINERAL, LLC

VERSUS          MAGISTRATE JUDGE METHVIN

PHARIS PETROLEUM CORPORATION, CHARLES D. HOBSON AND CASKIDS
OPERATING COMPANY

FILED_____          _____

                              DEPUTY CLERK

## COMPLAINT

GRB Oil and Gas Properties, Inc. and Gulf Coast Mineral, LLC (collectively "plaintiffs") state the following claim:

1.

Plaintiffs are:

a.      GRB Oil and Gas Properties, Inc. ("GRB"), a Nevada corporation with its principal place of business in Alabama; and

b.      Gulf Coast Mineral, LLC ("Gulf Coast Mineral"), a limited liability company organized under the laws of the State of Alabama whose sole member is



Patricia Billingsley, an individual domiciled in Alabama.

2.

Defendants are:

a.  Pharis Petroleum Corporation ("Pharis"), a Michigan corporation with its principal place of business in Michigan;

b.  Charles D. Hobson (hereinafter "Hobson"), an individual domiciled in Michigan, who is an officer, director, shareholder and controlling person of Pharis;

c.  CasKids Operating Company ("CasKids"), a Texas corporation with its principal place of business in Texas;

d.  Michael Caswell ("Caswell"), an individual domiciled in Houston, Texas who is an officer, director, shareholder and controlling person of CasKids; and

e.  Tabco Exploration, Inc. ("Tabco"), a Louisiana corporation with its principal place of business in Louisiana.

3.

This Court has federal question and diversity jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332 because this is an action under *inter alia* section 12 of the 1933 Securities Act and section 10 of the 1934 Securities Exchange Act and because there is diversity of citizenship between plaintiffs and defendants and the amount in controversy exceeds $75,000.

2

4.

Venue is proper because the defendants transact business in the Western District of Louisiana, the oil and gas properties that form the subject matter of this action are located in the Western District of Louisiana and a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Louisiana.

**THE SMEDES PROSPECT**

5.

In August 2000, Hobson, acting on behalf of Pharis, solicited Billingsley, acting on behalf of GRB, to participate in the Smedes Prospect, which consisted of drilling the Smedes Brothers No. 1 Well on certain oil and gas leases in the St. Martinville Field in St. Martin Parish, Louisiana.   Pharis and Hobson used the mail and telephone calls to make representations regarding the drilling of the Smedes Brothers No. 1 Well, the geology, projected c osts, a nticipated r eserves a nd a nticipated r evenues f rom t his p rospect.   T he offering of this fractional working interest in oil and gas leases was not registered with the Securities and Exchange Commission and defendants failed to provide a prospectus.

6.

Pharis and Hobson represented to Billingsley that:

a.      Pharis had purchased the right to drill a 352 acre lease located in St. Martin Parish, Louisiana;

b.      Pharis and CasKids would drill the Smedes Brothers No. 1 Well so that it would test 13 productive intervals in the St. Martinville Field, including the 5,200' sand, the Smedes sands, the G-6 sand, the H-2 sand, the H-6 sand the

3

J-1 sand, the 8,700' sand and all sands in between;

c.      The Smedes Brothers No. 1 Well was expected to produce between 200 to

500 barrels of oil per day for a total of 500,000 to 1,000,000 barrels of oil

from the 5200' SD sand, the Smedes sand, the G-6 sand, the H-2 sand, the H-

6 sand, the J-1 sand and the 8,700' sand over the life of the well;

d.      GRB would have to pay its share of the following actual costs on a traditional

"one-third for a quarter" basis:  (a) $542,800 in drilling cost to casing point,

(b) $200,000 in lease and land cost, and (c) a prospect generation fee

$50,000, for a total actual cost of $792,800;

e.      The foregoing costs would be actual costs and would not include markups;

f.      Pharis and Hobson did not have an overriding royalty interest in the leases;

g.      The projected field reserves were based upon reliable and accurate geological

studies and due diligence; and

h.      The well would be drilled in accordance with applicable industry standards.

7.

On or about October 5, 2000, Gary Billingsley, acting for and on behalf of GRB and

in reliance on the representations of Pharis and Hobson, signed the Smedes Prospect

Participation Agreement in which he agreed to purchase from Pharis an undivided 13%

fractional working interest in the Smedes Prospect.  The purchase price was to be $123,500,

which Pharis represented was 133% of 13% of the turnkey cost to drill the well, a prospect

generation fee, a "$200,000 lease and land" cost and the obligation to pay a prorata share of

expenses after casing point.  The interest was later changed to 14% because GRB later

4

acquired an additional one percent.  Therefore, the total amount p aid by GRB for this acquisition was $133,000.

8.

The Smedes Prospect Participation Agreement provided that the acquisition of the undivided working interest was in accordance with and subject to the terms and conditions of a contract operating agreement, joint operating agreement and turnkey drilling contract. The joint operating agreement provided that CasKids would be the operator.  The contract operating agreement provided that Pharis was the operator pursuant to a *pro forma* operating agreement dated effective September 1, 2000 and that Pharis engaged CasKids to discharge the obligations  of Pharis under the *pro forma* operating agreement.  The turnkey drilling contract provided t he  terms a nd c onditions b y w hich C asKids w ould d rill t he S medes Brothers No. 1 Well on the Smedes Prospect to a total depth of 8,900' for the turnkey price of $542,800.

9.

GRB paid Pharis $133,000 in two payments made on December 11 and 21, 2000.

10.

Sometime after December 2000, CasKids drilled the Smedes Brothers No. 1 well.

11.

GRB has been charged and has paid for the cost of drilling, completing and operating the Smedes Brothers No. 1 Well.

12.

In breach of its contract obligations, fiduciary duty and/or duty of good faith and/or

5

fair dealing, Pharis has not delivered an assignment of the oil and gas leases and well despite demand.

13.

Pharis and CasKids were obligated to drill the proposed well in a manner that would test and explore the sands between 5,200' and 8,900', including the 5,200' sand, the Smedes sand, the G-6 sand, the H-2 sand, the H-6 sand, the J-1 sand and the 8,700' sand.

14.

Pharis and CasKids allowed the Smedes Brothers No. 1 Well to deviate from the proposal and, consequently, missed several of the sands that were to be tested.  Pharis, CasKids and Caswell were negligent and grossly negligent in allowing the well to drift so far as to miss these sands.

15.

Pharis breached the Smedes Prospect Participation Agreement, turnkey drilling contract, contract operating agreement and joint operating agreement, and its fiduciary duty and/or duty of good faith and fair dealing, by failing to cause the well to be drilled as represented.  CasKids breached the turnkey drilling contract, contract operating agreement and joint operating agreement, and its fiduciary duty and/or duty of good faith and fair dealing, by failing to drill the well as agreed upon.

16.

Pharis, Hobson, Caswell and CasKids further breached the Smedes Prospect Participation Agreement, turnkey drilling contract, contract operating agreement and joint operating agreement, and their fiduciary duties and/or duties of good faith and fair dealing,

6

by charging inflated costs for drilling, completing and operating the well both before and after casing point.

17.

Pharis, Hobson and CasKids, in breach of the agreements, their fiduciary duties, their duties of good faith and fair dealing and their legal duties, have refused to permit plaintiffs to audit their books and records regarding the expenses in drilling and operating the Smedes Brothers No. 1 Well.

18.

In 2003, plaintiffs began to suspect for the first time that the representations made by Pharis and Hobson to induce GRB's investment in the Smedes Prospect were false and misleading and failed to include material information regarding said prospect.

19.

Plaintiffs learned that:

a.  The information submitted by Pharis to GRB describing the location and geology of the Smedes Prospect was based upon false and/or inaccurate information;

b.  The charges to plaintiffs for the costs of drilling, completing and operating the Smedes Brothers No. 1 Well were inflated;

c.  Pharis and/or Hobson had a four percent overriding royalty interest in the Smedes Prospect;

d.  The potential reserves of the Smedes Prospect were overstated or inflated by five or six times the actual amount; and

7

e.     The Smedes Brothers No. 1 Well missed many of the target sands as a result of the well bore drifting outside of the target.

20.

Pharis and Hobson knew or should have known that their representations and their failures to disclose material information were false and misleading when they were made. Alternatively, Pharis and Hobson were reckless in their representations of material facts and failures to disclose material facts.

21.

Caswell and CasKids knew or should have known that Pharis and Hobson planned to and did offer unregistered securities.  On information and belief, Caswell and CasKids aided and abetted, participated in and benefitted from Hobson's and Pharis' misrepresentations and suppressions of the truth.

22.

GRB relied to its detriment on the false information supplied by Pharis and Hobson and their failure to disclose material information and would not have made the investment in the Smedes Prospect but for this misinformation. If Pharis and Hobson had not suppressed the truth, GRB would not have agreed to invest in the prospect and would not have paid its portion of the inflated costs for drilling, completing and operating the prospect.

23.

On information and belief, Caskids, acting by and through Caswell, acquired a royalty interest and an overriding royalty interest in the Smedes Prospect.  Under the terms of the Smedes Prospect Agreements and CasKids' fiduciary duty and duty of good faith and fair

dealing, CasKids was required to offer this interest to GRB. CasKids has not offered this interest to plaintiffs. In the event that GRB is not entitled to recission of its interest, then it is entitled to its proportionate share of this overriding royalty interest and the revenues attributable thereto.

## THE SMEDES-STOCKSTILL SALTWATER DISPOSAL WELL

24.

On or about July 2001, Hobson, Pharis, Caswell and CasKids represented to GRB that a saltwater disposal well was necessary in order to dispose of saltwater produce by the Smedes Brothers Nos. 1 Well. Defendants lead GRB to believe that this was the only reason to acquire such a well, representing that

a.  A saltwater disposal well was needed for the disposition of saltwater exclusively generated by the Smedes Brothers No. 1 Well in which GRB had an interest;

b.  GRB would receive an assignment of its working interest in said saltwater disposal well;

c.  A saltwater disposal well would pay for itself in less than a year in savings; and

c.  GRB would be charged its proportionate share of the cost for the acquisition and operation of said well.

25.

Based upon the foregoing representations, GRB elected to participate in the acquisition of the Smedes-Stockstill Saltwater Disposal Well.

9

26.

Pharis and Hobson charged GRB its 14% share of $140,750 for said saltwater disposal well, including the cost to re-work the well, representing that this was GRB's share of the actual costs. GRB paid this sum in reliance upon the representations made by Hobson and Pharis. Later, defendants represented that the joint venture had in fact acquired the Smedes-Stockstill Saltwater Disposal Well. The offering and sale of this interest was not registered with the Securities Exchange Commission and defendants failed to provide a prospectus.

27.

As GRB began to suspect in 2003, defendants breached the contracts with GRB, and their fiduciary duties and duties of good faith and fair dealing, pertaining to the acquisition of the Smedes-Stockstill Saltwater Disposal Well because:

a.   It was not necessary to acquire this well except for defendants' failure to properly drill the Smedes Brothers No. 1 Well;

b.   Defendants overcharged GRB for the cost of the Smedes-Stockstill Saltwater Disposal Well;

b.   Defendants have refused to deliver an assignment of said saltwater disposal well to GRB;

c.   Without GRB's consent and over GRB's objection, Pharis, CasKids and Tabco are trespassing and misappropriating GRB's property by using the Smedes-Stockstill Saltwater Disposal Well to dispose of saltwater from wells in which GRB has no interest without any compensation to GRB;.

10

28.

As GRB began to suspect in 2003, defendants intentionally, recklessly, gross negligently and/or negligently misrepresented and/or failed to disclose that they intended to use, and are using, the Smedes-Stockstill Saltwater Disposal Well to dispose of saltwater from wells owned by Pharis, Hobson, Caswell, CasKids and/or Tabco in which GRB has no ownership interest and that they did not intend to assign an interest in said well to GRB.

29.

Caswell and CasKids aided and abetted the misrepresentations and suppressions of the truth made by Pharis and Hobson.

30.

GRB relied to its detriment on the misrepresentations and suppressions of the truth by Pharis and Hobson in paying for the purchase and operation of the Smedes-Stockstill Saltwater Disposal Well.

31.

GRB did not begin to suspect that defendants had made false representations and had failed to disclose material information until 2003 when Defendants refused to furnish GRB with its assignment ownership interest in the various wells in which GRB had participated with these Defendants.

32.

In the event that GRB is not entitled to a recission of its entire investment, then it is entitled to damages including without limitation any amounts by which defendants profited by using the Smedes-Stockstill Saltwater Disposal Well, $219,912 that CasKids, Tabco

and/or others saved by using said well and any other profits, savings and/or damages.

## THE SMEDES BROTHERS NO. 2 WELL

33.

In 2001, Pharis and Hobson induced GRB to participate in the drilling of the Smedes Brothers No. 2 Well on the same prospect by representing that it would increase the production from this leasehold by 200 barrels per day.

34.

GRB invested in the Smedes No. 2 Well under the same terms and conditions and under the same contracts involved in the Smedes Brothers No. 1 Well described above.

35.

Pharis and CasKids wrongfully charged GRB for expenses involved in the operation and re-work of the Smedes No. 2 Well without issuing the required Authorization for Expenditure (AFE). Under the contracts, an AFE was to be issued and approved for expenditures in excess of $25,000. Pharis and CasKids owes GRB at least $14,770 for unauthorized expenditures and there may be more.

36.

Defendants breached the Smedes Contracts with GRB, and their fiduciary duties and duties of good faith and fair dealing, in connection with the drilling and operating of the Smedes No. 2 Well by charging GRB for expenses that were not properly authorized under the contract documents. Defendants also breached said contracts by failing to provide GRB with an assignment of its working interest in the Smedes No. 2 Well.

12

37.

Hobson and Pharis, acting in concert with CasKids, willfully, recklessly, gross negligently and/or negligently misrepresented to GRB that drilling the Smedes No. 2 Well would increase the oil and gas production in the prospect and that the costs for drilling the Smedes No. 2 Well were reasonable, necessary, within applicable industry standards and allowed under the contracts. These false representations were made with the intent to induce GRB to invest additional money in the prospect. GRB relied upon these misrepresentations to its determent in investing money in said well and prospect.

38.

GRB did not suspect that these representations were false and misleading until 2003 when it discovered that the Smedes Brothers No. 2 Well would not have even been necessary had the Smedes Brothers No. 1 Well been drilled properly.

39.

GRB has not received an assignment of its interest in the leases or the well.

40.

Pharis, Hobson and CasKids breached the Smedes Prospect Agreements, and their fiduciary duties and duties of good faith and fair dealing to GRB, by attempting to inject saltwater into the annulus of the Smedes Brother No. 2 Well when there would have been sufficient disposal capacity in the Smedes-Stockstill Saltwater Disposal Well, discussed below, had CasKids not been injecting water into the well. Without disclosing the facts, Pharis invoiced and collected from GRB the costs of this attempt.

## WHITE LIGHTIN PROSPECT

41.

On or about April 30, 2001, Patricia Fitzgerald, acting for and on behalf of GRB and in reliance on the representations of Pharis and Hobson, signed a Participation Agreement in which GRB agreed to purchase from Pharis an undivided 13% fractional working interest in the White Lightin Prospect in Conecuh and Escambia Counties, Alabama. The Participation agreement called for GRB to pay Pharis $207,693, which Pharis and Hobson represented was 133% of 13% of the prospect leasehold costs and drilling costs to casing point.

42.

GRB paid the aforesaid costs but did not receive an assignment of its interest despite repeated demands.  Pharis recently sent an assignment for less of an interest than for which GRB contracted.

43.

The offering and sale of this fractional undivided interest in oil and gas leases was not registered with the Securities Exchange Commission and defendants failed to provide a prospectus.

44.

In 2003, GRB learned that in fact it was not charged 133% of the actual drilling costs but rather 133% of 125% o r a total of about 166%.  Hobson and Pharis intentionally, recklessly and/or negligently misrepresented to GRB the amount of the costs it would be charged.

45.

GRB is entitled to a refund of all sums paid to Pharis and Hobson in connection with the White Lightin Prospect.

46.

Pharis and Hobson overcharged GRB by $10,155.72 plus $3,648.59 plus $33,540 in connection with the drilling, completing and operating of the McMillan 39-19 Well on the White Lightin Prospect. They have refused to reimburse GRB these sums despite demand.

47.

Pharis and Hobson have refused to reimburse to GRB $8,285which is GRB's share of a credit issued to Pharis by Century Operating, the operator of the well on the White Lightin Prospect.

**THE SOUTH PERRY PROSPECT**

48.

On August 14, 2002, Gulf Coast Mineral, LLC ("GCM") signed a Participation Agreement, agreeing to acquire from Pharis an undivided 2% interest in the South Perry Prospect located in Vermilion Parish, Louisiana for the sum of $39,450.00. Pharis represented that the purchase price was 2% of the before casing point cost of $1,480,050, comprised of $1,180,000 before casing point drilling costs and $300,000 lease, land, geological, geophysical and prospect generation fee, "multiplied by 1.333 (the traditional third for a quarter trade)." The acquisition of this interest was in accordance with and subject to the terms and conditions of an AFE, the leases covering about 470 acres, a Contract Operating Agreement and a Joint Operating Agreement.

15

49.

On or about May 2002, GCM paid the purchase price called for under the South Perry Prospect Participation Agreement and thereafter paid 2% of the costs of drilling, completing and operating the South Perry No. 1 Well, now known as the Cecil Guidry No. 1 Well.

50.

In June 2002, the South Perry No. 1 Well was drilled on the South Perry Prospect and resulted in a commercial well.  GCM has paid its share of the drilling, completion and operating costs for this well.

51.

Petrogulf Corporation drilled the South Perry No. 1 Well pursuant to the Joint Operating Agreement and Contract Operator Agreement.

52.

In breach of their contract, and their fiduciary duties and duties of good faith and fair dealing, defendants have refused to provide plaintiffs with an opportunity to inspect their records to verify the charges to plaintiffs for the drilling and operation of said well, together with the revenues from production of the well.

53.

On August 25, 2003, Pharis signed an assignment to GCM of the South Perry Prospect leases which provided:

> Pharis does hereby assign ... unto Gulf Coast a portion of ASSIGNOR's interest in and to the thirty-eight Subject Leases set forth on **Exhibit A,** insofar and only insofar as (1) to that part of the Subject Leases that lie within the geographic confines of the ALL RA SUA as defined in the Louisiana Office of Conservation Order No. 526-B-1 dated effective 1/8/02, a **two percent (2%)** 8/8ths working interest with an actual net

16

revenue interest of 1.42% (a 71% proportionate NRI), and (2) such leases have been previously assigned to Pharis.  (Emphasis in original).

54.

Pharis contends that this assignment conveyed only 2% of its interest in said prospect leases which is less than a 2% interest in said prospect leases because Pharis only owns about 97% of said leases.  GCM contends that this assignment conveyed 2% of said leases.  The South Perry Prospect Participation Agreement called for an assignment of 2% of the prospect leases, Pharis did not disclose that it did not own 100% of said leases and GCM paid for a full 2% of the costs of drilling, operating and completing the well on the prospect.  A justiciable controversy exists between Pharis and GCM regarding the interpretation of said assignment.  GCM is entitled to a declaratory judgment that Pharis has assigned a full 2% of the prospect leases to GCM.  In the alternative, GCM is entitled to an order compelling Pharis to assign to GCM a full 2% interest in said leases.

55.

GCM is entitled to be paid the revenues attributable to the full 2% interest in the prospect from the date of first production forward.

56.

In the alternative, GCM is entitled to a refund of all costs paid in excess of the interest actually assigned.

**SOUTH PERRY PROSPECT II**

57.

On November 25, 2002, Patricia Billingsley, acting on behalf of GCM, signed a

17

Participation Agreement, agreeing to acquire from Pharis an undivided 15% working interest in the South Perry Prospect II and the South Perry Well located in Vermillion Parish, Louisiana for the sum of $338,325. GCM agreed to pay Pharis up-front costs, including a prospect generation fee, land geological and geophysical costs of $590,000 and actual before casing point costs of $1,665,450. Pharis would receive 25% of GCM's interest after casing point. The offering and sale of this security was not registered with the Securities and Exchange Commission and defendants failed to provide a prospectus.

58.

In connection with the offering and sale of an interest in the South Perry Prospect II, Pharis and Hobson did not disclose that he and his wife, through a business entity that they controlled, retained an overriding royalty interest in the prospect. Had this information been disclosed, then GCM would not have invested in the prospect.

59.

On information and belief, Pharis and/or CasKids has acted as operator of the South Perry Prospect II. CasKids and Pharis failed to notify GCM that they were going to plug and abandon the South Perry Prospect II Well, the Detraz No. 1 Well. They have charged costs to GCM for work done on wells and prospects which they own but GCM has no interest in. They purported to transfer the operatorship of the South Perry Prospect II and Detraz No. 1 Well to Petrogulf Corporation, a non-participant in the prospect, without offering the operatorship to the participants and without notice to GCM. They failed to timely provide well information, including information regarding the pressure testing of formations in said well. Consequently, CasKids and/or Pharis should be removed as operator of the well, GCM

18

should be made the operator and GCM should recover damages including without limitation lost opportunity costs.

## GENERAL ALLEGATIONS

60.

In all of the foregoing instances, defendants made use of the instruments of transportation or communication in interstate commerce or of the mails to solicit, obtain payment for and/or to deliver the aforementioned representations and/or securities.

61.

All or a portion of the wrongful conduct by Pharis and Hobson occurred in Michigan, Illinois and Alabama. All or a portion of the wrongful conduct by CasKids occurred in Texas.

62.

Plaintiffs are entitled to rescind all of their interests in the aforementioned prospects and Participation Agreements, except for the South Perry Prospect, by virtue of defendants' violation of section 12 of the Securities Act of 1933, section 10 of the Securities Exchange Act of 1934, state blue sky laws, unfair and deceptive trade practices, fraud and misrepresentation, breach of contract, fiduciary duties and good faith and fair dealing and tortious conduct. Plaintiffs are entitled to a complete refund of all sums paid to defendants plus punitive damages, penalties, attorneys fees, interests and costs. Plaintiffs tender their interest in said prospects, except for their interest in the South Perry Prospect, to defendants.

63.

In the alternative, in the event that plaintiffs are not entitled to recission, then

plaintiffs are entitled to compensatory damages, penalties, punitive damages, attorneys fees, interests and costs.

64.

Pharis, Hobson, CasKids and Caswell should be removed as operators of the Smedes Prospect and the wells thereon and the South Perry II Prospect.

65.

Plaintiffs are entitled to and request a trial by jury.

WHEREFORE, plaintiffs pray:

1.    That GCM be declared to be the owner of a full two percent interest in the South Perry Prospect leases or, in the alternative, that defendants be compelled to execute and deliver an assignment of a full two percent interest in the South Perry Prospect leases, and for judgment in favor of GCM and against Pharis for two percent of the revenues attributable to said prospect from the date of first production forward; and

2.    For recission of all of the Participation Agreements, except for the South Perry Prospect Participation Agreement, and for judgment against Hobson, Pharis, Caswell and CasKids *in solido* in the amount of all sums paid by plaintiffs in connection with the Smedes Prospect and the wells drilled and acquired therein, and against Pharis and Hobson *in solido* for all sums paid in connection with all other Participation Agreements except for the South Perry Prospect Participation Agreement;

3.    Alternatively, if recission is not granted, (a) that defendants be compelled to

20

make the assignments required by the agreements, (b) that C asKids and Pharis be removed as operator of the Smedes Prospect, including the Smedes Brothers Nos. 1 and 2 wells and the Smedes-Stockstill Saltwater Disposal well, and the South Perry Prospect II and (c) that judgment be rendered (1) against Pharis, Hobson, CasKids and Caswell *in solido* for all damages sustained by plaintiffs in connection with said Smedes Prospect and the wells drilled and acquired thereon, (2) against Pharis, Hobson, CasKids, Caswell and Tabco *in solido* for disgorgement of all sums they saved by their unlawful disposal of saltwater in the Stockstill-Smedes Saltwater Disposal Well, the reasonable cost of disposal in said well and/or any damages sustained by plaintiffs in connection therewith and (3) against Pharis and Hobson *in solido* for all damages sustained by plaintiffs in all of the other prospects;

4.    In either alternative, for punitive damages, penalties, interest, costs and attorneys fees; and

5.    For all general and equitable relief.

21

Respectfully Submitted

Guy E. Wall (7718), T.A.
Paul E. Bullington (14109)
Jonathan Cook (25629)

WALL & BULLINGTON, LLC
2030 Dickory Ave., Suite 104
New Orleans, La. 70123
Tel: (504) 736-0347
Fax: (504) 734-8574

By:_____
    Guy E. Wall (7718), T. A.

Attorneys for Plaintiffs, GRB Oil and Gas
Properties, Inc. and Gulf Coast Mineral, LLC

PLEASE SERVE:

**Pharis Petroleum Corporation**, through its registered agent for service of process, Charles
D. Hobson, by Long Arm Service.

**Charles D. Hobson**, by Long Arm Service.

**CasKids Operating Company**, through its registered agent for service of process, Michael
Caswell, by Long Arm Service.

**Michael Caswell**, by Long Arm Service.

**Tabco Exploration, Inc.**, through its registered agent for service of process: THOMAS A.
BLANKENSHIP, JR., 5401 WIMBLEDON CT., NEW ORLEANS, LA 70131

22